# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

Mark J. Minnick,                              )
                                 )
        *Plaintiff,*                          )
                                 )    Case No. 14 CV 50105
v.                                            )
                                 )    Magistrate Judge Iain D. Johnston
Carolyn W. Colvin,                            )
Acting Commissioner of the                    )
Social Security Administration,               )
                                 )
        *Defendant.*                          )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Mark J. Minnick, brings this action under 42 U.S.C. § 405(g), seeking reversal or remand of the decision denying him social security disability benefits. For the reasons set forth below, the decision is affirmed.

## I. BACKGROUND[1]

On November 18, 2010, Plaintiff filed an application for supplemental security income benefits, alleging a disability beginning on February 26, 2010.[2] R. 11-12, 201. In a disability report from a prior application in February 2010, Plaintiff asserted that he stopped working in February 2006 because he had to take care of his sick wife. R. 225. However, in a supplemental report from November 2010, Plaintiff asserted that he stopped working in January 1997 because of pain in his arm and knee, arthritis in his neck and back, high blood

---

[1] The following facts are only an overview of the medical evidence provided in the administrative record.

[2] At the administrative hearing, Plaintiff amended his onset date from January 1, 1997 to February 26, 2010, which was the date Plaintiff previously filed an application for supplemental security income.

pressure and memory loss, but these conditions did not cause Plaintiff to make any changes in his work activity. R. 260. On February 15, 2013, the Administrative Law Judge ("ALJ") held a hearing to review the Social Security Administration's denial of Plaintiff's request for benefits. R. 9-60. Plaintiff was represented at the hearing by the same attorney representing him in this appeal. Plaintiff, medical experts Drs. Ashok Jilhewar and Michael Carney and vocational expert James Radke ("VE") testified at the hearing.

At the hearing, Plaintiff testified that he was 43 years old and completed the 9th grade in school. R. 28, 49. Plaintiff dropped out of high school because he threw a desk at a teacher after getting angry. R. 28. Plaintiff testified he was in special education classes in both middle and high school, and had difficulty reading and writing. R. 28-29.

He had been married at least 20 years and lived with his wife and two children, who were 18 and 16 years old. R. 19, 48. Plaintiff's wife no longer worked and was on disability for her seizure disorder. R. 32. Plaintiff had not had a driver's license for about 15 years. R. 16, 30. Plaintiff had difficulty with the driver's test so he never renewed his license after it expired. R. 30.

Plaintiff testified that he did not do much around the house and was very dependent on his wife. R. 19-20, 30. His wife drove him to the store or gas station about once or twice a day and he visited with friends and family every few months. R. 20-21. Plaintiff last worked part-time in 2009 and 2010 as a roofer. R. 17-18, 215, 289. Plaintiff testified that for the past eight years he had pain and migraines

related to arthritis in his back and neck, which made it hard for him to sit or stand longer than 20 or 25 minutes at a time. R. 21-23, 25. He could only walk about half a block before experiencing pain. R. 22. He described problems with his elbow, knee and high blood pressure. R. 16-17, 24, 26. Plaintiff also testified that he suffered from depression for the past "couple years." R. 27.

Dr. Jilhewar testified as an independent medical expert in the field of internal medicine. R. 34, 182. Dr. Jilhewar testified that Plaintiff's severe impairments did not meet or equal the criteria for a listing impairment. R. 35-40. However, Dr. Jilhewar opined that Plaintiff's impairments and testimony regarding pain limited him to sedentary work. R. 41.

Dr. Carney testified as an independent medical expert in the field of clinical psychology. R. R. 43, 185. Dr. Carney testified that the records revealed that Plaintiff had not had any mental health treatment, other than the use of Zoloft. R. 44. However, Plaintiff had been diagnosed with a pain disorder, personality disorder, dysthymia and mentally deficient. R. 44-45. Plaintiff had symptoms of dependency, aggression and impulsivity. R. 45. However, Dr. Carney did not believe Plaintiff's depression was severe. R. 46. Dr. Carney opined that Plaintiff's functional limitations for activities of daily living were mild, social functioning were moderate and concentration, persistence and pace were moderate because Plaintiff was "somewhat intellectually limited" and his memory was poor. R. 45-46. Dr. Carney came to this conclusion, in part, because of Plaintiff's work history, which showed he was able to function and work despite his limited capabilities. R. 49. Dr.

Carney testified that Plaintiff's functional limitations would limit him to understanding, remembering and carrying out "very simple tasks, but nothing beyond that." R. 46.

With regard to Listing 12.05 for intellectual disability, Dr. Carney opined that Plaintiff's IQ score of 63 was valid and that based on Plaintiff's testimony at the hearing, Dr. Carney also found Plaintiff "very limited intellectually." R. 48. However, Dr. Carney found that Plaintiff did not meet Listing 12.05 because although he had a low IQ score, he did not have a low IQ score and functional impairments before age 22. R. 45. Plaintiff's counsel questioned Dr. Carney, pointing out that Listing 12.05 only required deficits in adaptive functioning before age 22, not IQ scores. R. 46. Dr. Carney responded that he believed the listing required both. R 47.

The ALJ then read the listing criteria for 12.05, and noted that the language appeared to only require deficits in adaptive functioning before age 22. R. 47. Plaintiff's counsel asserted that Plaintiff showed he had deficits in adaptive functioning before age 22. R. 47. The ALJ stated that evidence was presented on the issue, but he was not making an evidentiary determination at the hearing. R. 47. The ALJ reiterated that regardless of whether an IQ score before age 22 was required under the listing, it would still be relevant evidence. R. 48.

The VE testified that Plaintiff's only past work in the last 15 years included roofing in 2009 and 2010. R. 51. The ALJ provided the VE with a hypothetical claimant with Plaintiff's age, education and work history who was limited to light

work and did "not possess the capacity to understand, recall, focus on, attend to or carry out complex or detailed instructions; nor does he have the ability to perform complex or detailed tasks or retain the ability to understand, recall, focus on attention, carry out simple, routine, repetitive type instructions, and to focus upon, attend to or perform simple, routine, repetitive tasks -- by that I mean tasks which do not change on a daily basis -- he can perform such tasks as its contained workman-like pace." R. 52. The VE testified that Plaintiff could not perform any past relevant work, but there were other light exertion jobs available for a claimant with these limitations, even if the claimant could not have more than incidental contact with the general public. R. 52-55. The ALJ also gave the VE the same hypothetical claimant limited to sedentary work, and the VE testified that there were sedentary jobs available for a claimant with these limitations. R. 53, 55-56. The ALJ added a limitation that the claimant could not sustain activities of work that included, among other things, "maintaining attention, focus, concentration for a sustained pace for at least six hours within an eight-hour day on a five-day-per-week basis." R. 57. The VE testified that this additional limitation would exclude all available work. R. 57.

Plaintiff's counsel then posed an additional limitation to the VE that the claimant was moderately limited "in interacting appropriately with supervisors, interacting appropriately with coworkers, and responding appropriately to usual work situations and to changes in a routine work setting as to the unskilled, sedentary jobs that [the VE] listed…such that the claimant would be off task at

intermittent times" other than for breaks and lunch.  R. 57-58.  Counsel noted that he believed it was a violation of the *O'Conner-Spinner* doctrine to merely restrict the claimant to simple tasks without accounting for all limitations.  R. 57-58.  The VE testified that if this limitation was a "consistent interruption" it would eliminate the sedentary jobs identified.  R. 58.

On April 25, 2013, the ALJ issued his ruling that Plaintiff was not disabled. R. 66-80.  The ALJ found that Plaintiff had the following severe impairments: degenerative disease of the lumbar and cervical spines, degenerative disease of the knees, arthralgia of the shoulders, status post facture of the left wrist, obesity, gastroesophageal reflux disease, history of umbilical hernia, hypertension, history of hepatitis, deficit in intellectual function, pain disorder associated with general medical condition, dysthymia, personality disorder and history of substance abuse. R. 68.  However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the criteria for a listing impairment.  R. 68-71.  The ALJ concluded that Plaintiff could not perform any past relevant work, but he had the Residual Functional Capacity ("RFC") to perform other sedentary work with numerous physical limitations and the following mental limitations: "simple, routine and repetitive tasks (those which do not change in [sic] on a daily basis), at a sustained workmenlike pace.  The claimant may not perform work, which requires more than incidental contact with members of the general public."  R. 71-78.

## II. LEGAL STANDARD

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). If the Commissioner's decision lacks evidentiary support or adequate discussion, then the court must remand the matter. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Moreover, a reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Indeed, even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Additionally, as the Seventh Circuit has repeatedly held, the federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist.

LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014) ("In the Seventh Circuit, an ALJ's decision can be supported by substantial evidence – or even a preponderance of the evidence, as it is here – but still will be overturned if the ALJ fails to build a 'logical bridge' from the evidence to her conclusion." (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996))); *Jensen v. Colvin*, No. 10 CV 50312, 2013 U.S. Dist. LEXIS 135452, at *33-34 (N.D. Ill. Sept. 23, 2013).

### III. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed or remanded because the ALJ failed to: (1) properly analyze whether he met the criteria for Listing 12.05(C); and (2) include moderate limitations in concentration, persistence or pace in the hypothetical the VE.

**A. Listing 12.05(C)**

Plaintiff takes issue with the ALJ's evaluation of his impairments under Listing 12.05, specifically subsection 12.05(C). Therefore, the Court will focus its analysis on this subsection. Listing 12.05 describes an intellectual disability and provides the following:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C or D are satisfied.

. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.05. Accordingly, to meet the criteria for Listing 12.05(C), Plaintiff must prove that he met *all four* of the following requirements: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22;[3] (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Adkins v. Astrue*, 226 Fed. App'x 600, 604-05 (7th Cir. 2007) (citations omitted); s*ee* 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(A) (stating that an impairment will meet Listing 12.05 if it satisfies both the diagnostic description in the introductory paragraph and any one of the four sets of criteria).

At step three of his analysis, the ALJ found that Plaintiff's mental impairments did not meet or equal the criteria for Listing 12.05. Although Plaintiff

---

[3] The regulations refer to "onset of the impairment before age 22," which would support the Commissioner's argument that both requirements one and two must have developed before Plaintiff reached age 22. 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.05; Defendant's Memorandum at 3, Dkt. 16 (citing *Foster v. Halter*, 279 F.3d 348, 354-55 (6th Cir. 2001)). The Seventh Circuit has not clearly articulated this distinction in setting out the criteria, but this distinction is not relevant to the issues in this appeal. *See Adkins*, 226 Fed. App'x at 605.

had a valid, verbal IQ score of 68, there was no other medical evidence to establish "the required co-existence of sub average intellectual functioning and deficits in adaptive functioning," which manifested during the developmental period before age 22. R. 69-71. The ALJ reiterated this finding in his RFC determination, where he again found that despite low IQ scores, including a full-scale IQ score of 63, there was "no evidence of adaptive deficits which were evident prior to the age of 22 years." R. 75-76. In light of the ALJ's findings, the parties do not dispute that Plaintiff satisfied the third and fourth requirements of the listing. Plaintiff had a valid, full-scale IQ score of 63 and a verbal comprehension IQ score of 68. R. 592. The ALJ also determined at step two that several of Plaintiff's physical and mental impairments were severe and that they imposed functional limitations on Plaintiff's ability to work. R. 68. See 20 C.F.R. Pt. 404, Subpt. P. App. 1, § 12.00(A) (stating that the regulations apply the same standard to determine a "significant work-related limitation of function" as is used to determine if an impairment is "severe" at step two). Additionally, the parties do not address, or seem to dispute, that Plaintiff met the first requirement.[4]

---

[4] Plaintiff's brief focused solely on whether he proved deficits in adaptive functioning, but did not address whether he also proved he had "significantly subaverage general intellectual functioning." Regardless, the argument relating to the second requirement is dispositive, so the Court need not address the ALJ's findings regarding the first requirement. Nevertheless, some authority supports Plaintiff's claim that his low IQ scores satisfied the first requirement. *See Anthony v. Astrue*, No. 1:10–cv–00136–DML–JMS, 2011 U.S. Dist. LEXIS 75307, at *18-19 (S.D. Ind. July 12, 2011) (finding that claimant's IQ scores satisfied both the IQ score requirement in subparagraph C as well as evidence of "significantly subaverage general intellectual functioning" in the introductory paragraph of 12.05).

Nevertheless, the parties dispute whether Plaintiff's has satisfied the second requirement of the listing's introductory paragraph; namely, that Plaintiff had "deficits in adaptive functioning" that manifested before age 22. The Seventh Circuit defines deficits in adaptive functioning as an "inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir.2007) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR)* 42 (4th ed. 2000)). The court explained that a claimant with a low IQ score alone may still be able to perform work; however, if a claimant "cannot cope with [the challenges of ordinary everyday life]," he or she is "not going to be able to hold down a full-time job." *Id*; *see also Adkins*, 226 Fed. App'x at 605 (stating that the ALJ should, in addition to IQ scores, consider other factors such as the claimant's life activities and employment history).

Additionally, the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) provides guidance and states that mental retardation is evidenced by "significantly subaverage general intellectual functioning [] that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSM-IV-TR)* 41 (4th ed. 2000)); *see also*

*Witt v. Barnhart*, 446 F. Supp. 2d 886, 895 (N.D. Ill. 2006) (relying on DSM-IV to determine deficits in adaptive functioning).

In this case, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff did not meet the listing requirements for 12.05(C) because he did not prove he had deficits in adaptive functioning before age 22. *See Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) (stating that the claimant has the burden in steps one through four); *Wilkins v. Barnhart*, 69 F. App'x 775, 781 (7th Cir. 2003) (stating that an ALJ is entitled to assume that a claimant represented by counsel is making his strongest case for benefits). The ALJ's determination correctly considered both Plaintiff's work history and daily activities. The ALJ relied on evidence that Plaintiff reported working as a roofer at age 13, but was unable to maintain employment due to knee pain and arthritis in his back and neck. R. 71, 590. Plaintiff claims there was no evidence of this statement in any of the consultative reports, but the Court located the statement in the consultative examining psychologist's report from Dr. Mark Langgut. *See* R. 590 ("Mr. Minnick began working as a roofer at age thirteen."). The ALJ further noted that in disability reports, Plaintiff reported working until 2006 and stopped working only to take care of his sick wife. R. 72, 225. Even in a supplemental report, Plaintiff claimed he stopped working in 1997 due to his conditions, but stated these conditions, including memory loss, did not cause him to make any changes in his work activity. R. 260.

Plaintiff also testified that he last worked part-time in 2009 and 2010 as a roofer (R. 17-18, 215, 289) and reported that his work history in the last 15 years included work: (1) in a factory from 1987 until 1988; (2) roofing from 1989 until 1990; (3) in a factory from 1995 until 1996; (4) at temporary jobs from 1992 until 1994; (5) in a factory from 1997 until 1998; (6) a car detailer in June 2002; and (7) at Dominos temporarily in June 2006 (R. 226, 255, 275). Plaintiff also identified working full-time in multiple factory jobs and in security, but he was unable to recall dates for this employment. R. 235-41. Although these jobs were not of extended duration, there was no indication that Plaintiff left any of these jobs due to his mental impairments. Instead, his work history shows that Plaintiff was able to function in a work setting, and the ALJ properly relied on such evidence. *See Adkins*, 226 Fed. App'x at 605 (finding that the claimant failed to demonstrate deficits in adaptive functioning where he was gainfully employed until age 41 and the record contained only minimal evidence about his cognitive and medical state before age 22 other than his own testimony that he only completed eighth grade); *Fischer v. Barnhart*, 129 Fed. App'x 297, 302 (7th Cir. 2005) (finding that the claimants 17-year work history without material complaints from his employer exemplified his adaptive abilities).

The ALJ also found relevant the fact that Plaintiff's wife reported knowing Plaintiff for 20 years, which would have preceded Plaintiff's 22nd birthday. R. 70-71, 267. Plaintiff testified that he had been married to his wife for at least 20 years and reported having a good relationship with both his wife and children. R. 48, 590.

Plaintiff testified being dependent on his wife, but also reported taking care of her when she was sick in 2006. R. 30, 225. The ALJ also relied on Dr. Carney's opinion that despite Plaintiff's dependence and his mental limitations, he had only mild functional limitations in activities of daily living because he was able to take care of his personal needs and prepare simple meals. R. 45, 69, 77-78, 243-45, 281-83. Plaintiff also visited with friends and family on a weekly basis and accompanied his wife on shipping trips. R. 70, 76, 247, 281-84. Accordingly, Dr. Carney determined that despite Plaintiff's low IQ scores, the record did not establish that Plaintiff had deficits in adaptive functioning that manifested before age 22. R. 45, 49, 71. The ALJ properly relied on this finding to determine that Plaintiff did not meet the requirements of Listing 12.05(C).

Plaintiff does not challenge the ALJ's reliance on Dr. Carney's opinions or the ALJ's other findings regarding the evidence in the record. Instead, Plaintiff relies solely on his school records and unidentified "current deficits," which he does not elaborate on, to make the conclusory claim that he had adaptive deficits before age 22. Plaintiff's Memorandum at 7-8, Dkt. 13. The Court is not persuaded by Plaintiff's limited argument on this issue.

Plaintiff makes this argument, despite the fact that the ALJ considered Plaintiff's school records in making his determination. The ALJ noted that the evidence revealed Plaintiff had completed the 9th grade, with no special education

services,[5] and his school grades revealed mostly C's and D's with no reported ongoing failures or deficits in adaptive functioning, such as a capacity for self-care. R. 70, 311-314. Plaintiff also testified he was able to read and write simple English. R. 70. While Plaintiff testified he was in special education classes in both middle and high school and reported to Dr. Langgut that he was in special education for the learning disordered, he twice reported that he did not attend any special education classes. *Compare* R. 28, 590 *with* R. 225, 261. Additionally, his education records, though difficult to read, do not indicate that Plaintiff was in special education classes. R. 311-314. Regardless, enrollment in special education classes would be only one consideration when determining deficits in adaptive functioning. More importantly, these records solely reveal Plaintiff's academic deficiencies and do not address any of his shortcomings in adaptive functioning.

Plaintiff's argument regarding these records mainly relies on a quote from one paragraph in Dr. Langgut's report. Plaintiff's Memorandum at 7, Dkt. 13. Dr. Langgut stated that Plaintiff

earned D's and F's in school, with no relative academic strengths. He was in special education classes for the learning disordered beginning in about the third grade. Mr. Minnick had problems with anger throughout his years of school. He had multiple suspensions from school due to fighting with his peers and arguing with his teachers. He repeated the ninth grade due to

---

[5] At step 3, the ALJ stated that Plaintiff completed 9th grade *with* special education classes, but cited Plaintiff's statement that he *did not* attend special education classes. *See* R. 70, 225. The ALJ corrected his reference to Plaintiff's special education later in his RFC analysis. *See* R. 75.

academic failure, then was expelled from school at age seventeen due to excessive failures and after he threw a desk at a teacher. R. 590.

First, the ALJ only gave "some weight" to Dr. Langgut's opinion regarding Plaintiff's ability to work, noting that Dr. Carney's opinion was more persuasive because it accounted for Plaintiff's previous work history despite his mental impairments. R. 78. Plaintiff does not address or challenge the ALJ's evaluation of Dr. Langgut's opinion or the fact that Dr. Langgut did not opine on whether Plaintiff had adaptive deficits before age 22. R. 589-98.

Second, the ALJ considered Plaintiff's school records, along with Plaintiff's adaptive functioning, and determined that he did not show he had adaptive deficits prior to age 22. *See Witt*, 446 F. Supp. 2d at 895-96 (concluding that the claimant failed to exhibit deficits in adaptive functioning manifested prior to age 22 because of his 18-year work history, even though he suffered from learning disabilities and received poor marks in special education classes). The Court is not authorized to simply reweigh the evidence because Plaintiff does not agree with the outcome. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (stating that the court should not reweigh the evidence nor substitute its judgment in place of the Commissioner). Moreover, even Dr. Langgut, along with Dr. Carney and the state agency psychologist, still found that Plaintiff's limitations did not preclude him from performing simple, routine and repetitive work, which is what the evaluation of

adaptive deficits is meant to ultimately determine. R. 46, 392, 596; *see Novy*, 497

F.3d at 710.

Other than Plaintiff's school records evidencing academic difficulty and his

testimony regarding anger problems, Plaintiff points to no other evidence to support

deficits in adaptive functioning before age 22. Such evidence is not conclusive proof

that Plaintiff's lack of academic strength or anger problems limited his adaptive

functioning. *See Cooper v. Massanari*, No. 00 C 8083, 2001 U.S. Dist. LEXIS 18895,

at *23-25 (N.D. Ill. Nov. 15, 2001) (finding that although the claimant had taken

special education classes and only completed the 9th grade, her work history and

functional activities were ample evidence to support the ALJ's conclusion that she

did not satisfy the adaptive deficits requirement of Listing 12.05(C)). Therefore,

despite Plaintiff's contention that the ALJ improperly considered evidence in his

decision at step three, this Court finds that the ALJ's decision was adequately

explained and supported by substantial evidence. Accordingly, this Court finds that

remand is not warranted on these grounds.

## B. Concentration, Persistence or Pace

Plaintiff also contends that the ALJ failed to include moderate limitations in

concentration, persistence or pace in the hypothetical to the VE. The Court

disagrees.

At the hearing, the ALJ offered a hypothetical to the VE that limited the

claimant to sedentary work with the following nonexertional limitations: cannot

understand, recall, focus on, attend to or carry out complex or detailed instructions

or tasks, but retains the ability to understand, recall, focus on and carry out simple, routine, repetitive type instructions or perform simple, routine, repetitive tasks. R. 52, 55. In light of these restrictions, the VE opined that the claimant could still perform sedentary jobs available in the workforce. R. 56. As a result, the ALJ concluded that Plaintiff could perform these jobs.

The ALJ's hypothetical to the VE is supported by the evidence in the record. In formulating the hypothetical to the VE and in making the RFC determination, the ALJ relied on Dr. Carney's testimony that Plaintiff's poor memory and limitations intellectually meant that Plaintiff had moderate difficulties in concentration, persistence or pace. R. 46, 69-70. In light of this moderate limitation, Dr. Carney determined that Plaintiff would only be capable of understanding, remembering and carrying out "very simple tasks." R. 46, 70. The state agency consulting psychologist similarly opined that Plaintiff only had moderate difficulties in concentration, persistence or pace, and he was able to understand, carry out and remember short and simple instructions. R. 77-78, 388, 392. Even Dr. Langggut opined that Plaintiff only had mild limitations in his ability to understand, remember and carry out simple instructions. R. 596.

In his ultimate RFC determination, the ALJ found that Plaintiff was able to perform sedentary work, but Plaintiff "does not possess the capacity to understand, recall, focus upon, attend to or carry out complex or detailed instructions or tasks; but he retains the capacity to understand, recall, focus upon, attend to or carry out simple, routine and repetitive instructions; and to focus upon, attend to and perform

simple, routine and repetitive tasks (those which do not change in [sic] on a daily basis)." R. 71. Thus, the ALJ accommodated for Plaintiff's moderate limitation in his ability to maintain concentration, persistence or pace.

The Commissioner pointed out in her response brief that Dr. Carney's medical opinion testimony supported the ALJ's RFC determination, and therefore, also supported the hypothetical to the VE. Despite this and the other supporting evidence in the record, Plaintiff did not did not respond to the Commissioner's argument in his reply. Plaintiff's Reply at 2, Dkt. 17. Instead, the Plaintiff stood on the argument in his opening brief that that the ALJ's hypothetical was insufficient under *O'Connor-Spinner v. Astrue*, 627 F.3d 614 (7th Cir. 2010), where the Seventh Circuit held that, "[i]n most cases, [ ] employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace." *Id.* (emphasis added). Not only does the Court find that Plaintiff forfeited this argument by not responding to the Commissioner's arguments in his reply brief, but the Court also finds that the *O'Connor-Spinner* doctrine does not apply to this case. S*ee Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that arguments not raised in response brief are forfeited).

The ALJ relied on Dr. Carney when determining that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace, but still had the ability to understand, remember and carry out simple tasks and instructions. Therefore, the hypothetical to the VE properly reflected the ALJ's findings and RFC

determination, which were supported by the evidence in the record. These restrictions were precisely what Dr. Carney, along with the state agency consultant and Dr. Langgut,[6] found Plaintiff had the concentration, persistence and pace to perform. Thus, there is no conflict between Plaintiff's capabilities and the job the VE and the ALJ determined Plaintiff could perform. *See O'Connor-Spinner*, 627 F.3d at 619 (explaining that there is no "per se requirement" that the specific terminology of concentration, persistence and pace be used in the hypothetical, as long as the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform.").

Additionally, although Plaintiff makes a cursory argument that the ALJ failed to discuss SSR 96-9p in his decision, Plaintiff does not elaborate on how it relates to the evidence in the record or specifically how it would have affected the ultimate disability determination. As such, the Court finds this argument forfeited as well for lack of development. *See Jarrard v. CDI Telecomm., Inc.*, 408 F.3d 905, 916 (7th Cir. 2005) (perfunctory and undeveloped arguments that are unsupported by pertinent authority are forfeited on appeal).

---

[6] Although the ALJ only gave "some weight" to these opinions, Plaintiff does not challenge the ALJ's determination and does not point to other contrary opinions in the record for support. *See* R. 78.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (Dkt. 13) is denied, and the Commissioner's motion (Dkt. 16) is granted. The decision of the ALJ is affirmed.

Date: February 22, 2016            By: _____
                                        Iain D. Johnston
                                        United States Magistrate Judge